Filed 11/2/22 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ALBERT VILLAREAL,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LAD-T, LLC, et al.,<br><br>    Defendants and<br>Appellants. | B313681<br><br>(Los Angeles County<br>Super. Ct.<br>No. 20STCV32252)<br><br>ORDER MODIFYING<br>OPINION<br><br>(NO CHANGE IN<br>APPELLATE JUDGMENT) |

THE COURT:

The above-entitled opinion filed on October 20, 2022 is modified as follows:

On page 22, in the second to last sentence of the last paragraph, replace "FSG files" with "defendants file," so the sentence reads:

> In addition, if defendants file a second motion to compel arbitration, this would further delay the trial court proceeding (now two years after Villareal filed this action)

given the need for the filing, scheduling, and briefing on a new motion.

There is no change in the appellate judgment.

_____

PERLUSS, P.J.          SEGAL, J.          FEUER, J.

Filed 10/20/22 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ALBERT VILLAREAL, | B313681 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. |
| v. | No. 20STCV32252) |
| LAD-T, LLC et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge. Vacated and remanded with directions.

Fine, Boggs & Perkins and Michael K. Perkins for Defendants and Appellants.

Employee Justice Legal Group, Kaveh S. Elihu and Matias N. Castro for Plaintiff and Respondent.

————————————

LAD-T, LLC, dba Toyota of Downtown Los Angeles (LAD-T), and its parent company Lithia Motors Inc. (Lithia; collectively, defendants) appeal from an order denying their

motion to compel arbitration of Albert Villareal's claims brought under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.). Defendants contend the trial court erred in finding Business and Professions Code[1] section 17918 barred them from enforcing an arbitration agreement made in the name of an unregistered fictitious business, DT Los Angeles Toyota. The trial court did not err. Section 17918 bars a party that regularly transacts business in California for profit under a fictitious business name from maintaining an action on a contract until a fictitious business name statement is filed. Substantial evidence supports the trial court's finding LAD-T was transacting business as DT Los Angeles Toyota. Although section 17918 is most commonly applied to prevent a plaintiff from maintaining an action on a contract in the name of the fictitious business, we conclude it also applies to bar a party from maintaining a motion to compel arbitration because the motion is in essence a suit in equity to compel performance of a contract—the arbitration agreement.

Further, contrary to defendants' contention, Villareal timely asserted his defense to the motion to compel arbitration by raising it in his opposition to the motion. In addition, the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) does not preempt section 17918 because the requirement that a party file a fictitious business name statement applies to all actions on a contract, not just arbitration agreements.

During the pendency of this appeal and nearly one year after the trial court denied the motion to compel arbitration,

---

[1] All further undesignated statutory references are to the Business and Professions Code.

2

defendants registered the name DT Los Angeles Toyota. They now contend we should reverse the trial court's order as moot because there is no longer a bar to their maintaining their motion to compel arbitration. Villareal responds that we should dismiss the appeal as moot, leaving the trial court order in place. Neither position is quite correct. The appeal is not moot because if we were to decide the appeal in defendants' favor, we could provide them immediate relief by directing the trial court to grant the motion to compel arbitration. We therefore reach the merits of the appeal. However, because the failure to file a fictitious business name statement does not invalidate the agreement in the name of the business, instead only abating the proceeding until there is compliance, we vacate the trial court's order and remand for the court to consider whether defendants' motion to compel arbitration should now be granted. Villareal cannot on remand relitigate issues already decided (for example, unconscionability), but he should be afforded an opportunity in the trial court to raise waiver as a defense to enforcement of the arbitration agreement based on defendants' delayed filing of the fictitious business name statement.

## BACKGROUND AND PROCEDURAL HISTORY

A.  *The Complaint*

As alleged in the complaint, Villareal began working for defendants as a car salesman in 2015, and his job performance was satisfactory or better. On February 1, 2018 Villareal injured his knee and back and was unable to walk without difficulty. He was diagnosed with a torn meniscus, and on February 13 he was

3

given an injection for pain. He returned to work on March 1. Villareal worked up until June 4, 2018, when he took leave due to recurring pain. He underwent knee surgery in August 2018. Following the surgery, Villareal was placed on two months' medical leave. On October 30, 2018 Villareal informed defendants his medical provider had extended his medical leave for another three months. Defendants terminated Villareal's employment the following day.

Villareal filed this action on August 24, 2020, asserting claims under FEHA for discrimination, retaliation, failure to prevent discrimination, failure to provide reasonable accommodation, and failure to engage in a good faith interactive process. The complaint also asserted claims for retaliation in violation of the California Family Rights Act (CFRA; Gov. Code, § 12945.2), wrongful termination in violation of public policy, declaratory judgment, and (against LAD-T only) refusal to permit inspection of personnel and payroll records in violation of the Labor Code.

B.    *Motion To Compel Arbitration*

On October 14, 2020 defendants filed a motion to compel arbitration.[2] The motion and supporting memorandum stated

---

[2]    Defendants styled their motion as a petition to compel arbitration. (See Code Civ. Proc., § 1281.2 [referring to a request to enforce an arbitration agreement as a "petition of a party to an arbitration agreement"].) However, because the pleading was filed in an existing lawsuit, we refer to it as "motion to compel arbitration." (See *Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 772 ["There is an 'analytic distinction' between a motion (or petition) to compel arbitration filed within an existing action, as

4

Villareal commenced employment with LAD-T in June 2017, and at that time he electronically signed an agreement to resolve employment disputes through binding arbitration. The declaration of Lithia's recruiting director attached a document dated June 23, 2017 with two sections titled "At Will Employment Agreement" and "Binding Arbitration Agreement" (collectively, the agreement). A header on the first page of the agreement stated it was "[b]etween DT Los Angeles Toyota and Albert Villar[]eal."

In his opposition Villareal argued defendants failed to meet their burden to establish the existence of a valid arbitration agreement because DT Los Angeles Toyota was neither a legal entity nor a fictitious business name. Rather, the vehicle dealership where Villareal worked, at the corner of Figueroa Street and Washington Boulevard in downtown Los Angeles, operated under the name Toyota of Downtown LA or Toyota of Downtown Los Angeles. Villareal argued that DT Los Angeles Toyota, as a nonentity, lacked the capacity to contract or consent to the agreement. Moreover, under section 17900 et seq., defendants could not maintain an action to enforce an agreement made in the name DT Los Angeles Toyota because they had not filed a fictitious business name statement with the Los Angeles

---

here, and a petition to compel arbitration that commences an independent action."]; accord, *Betancourt v. Prudential Overall Supply* (2017) 9 Cal.App.5th 439, 442, fn. 2 ["Because the document was filed within an existing action, rather than commencing an independent action, for the sake of clarity, we refer to it as a 'motion to compel arbitration.'"].)

County Registrar-Recorder/County Clerk (Registrar-Recorder). Villareal also argued defendants lacked authority to enter into an arbitration agreement in June 2017 because Lithia had not yet acquired the dealership from the previous owner, the Shammas Group (Shammas). Thus, Villareal was still an employee of Shammas. Further, the arbitration agreement was procedurally and substantively unconscionable.

Villareal's attorney submitted a declaration attaching copies of public records showing that Lithia incorporated LAD-T with the California Secretary of State between March and May 2017, and, according to a disclosure filed with the United States Securities and Exchange Commission, in August 2017 Lithia finalized its acquisition of several automobile dealerships in downtown Los Angeles, including Toyota of Downtown LA. The attachments included a printout of the results of a fictitious business name search on the Registrar-Recorder's website indicating a search for "DT Los Angeles Toyota" returned no matching registrations.

In their reply memorandum and supporting declarations, defendants asserted that in the course of their acquisition of eight Los Angeles vehicle dealerships from Shammas, they executed employment and arbitration agreements with hundreds of Shammas employees (including Villareal) before the deal closed in order to ensure seamless operation of the dealerships throughout the change in ownership. Defendants admitted "the legal entity 'DT Los Angeles Toyota' was never an entity in existence." Lithia's payroll manager stated in her declaration that DT Los Angeles Toyota was an "internal DBA" used in Lithia's human resources computer systems to populate employment-related documents. She added that the name "may

6

not be the same as the DBA on the company registration." Rather, the name was "an internal way for [Lithia] to determine which of the 8 Shammas dealerships which [Lithia] acquired a given worker was employed with." Defendants argued that "minor variations in the name of the employer" do not invalidate an arbitration agreement, and Villareal was not confused about "the entity that provided him electronic access to his onboarding paperwork," especially because he continued to work for LAD-T at the Toyota of Downtown Los Angeles dealership for more than a year after signing the agreement. Defendants also argued the agreement was not procedurally or substantively unconscionable.

C.    *The Trial Court Ruling*

After a hearing, on June 1, 2021 the trial court denied defendants' motion to compel arbitration. In an 11-page order, the court found the FAA governed the agreement; defendants met their burden of showing a valid agreement to arbitrate; and Villareal's contention defendants had no legal authority to enter into an agreement with employees of Toyota of Downtown Los Angeles during the Shammas acquisition lacked merit. Further, Villareal did not carry his burden to show procedural and substantive unconscionability.

However, the trial court found defendants could not enforce the agreement because they failed to file a fictitious business name statement as required by the Business and Professions Code. Specifically, section 17910 requires that any person who "regularly transacts business" for profit in California under a fictitious business name must file a fictitious business name statement with the clerk of the county (section 17915). Further, section 17918 provides that a party who fails to file a valid

7

statement cannot "maintain any action upon or on account of any contract made . . . in the fictitious business name in any court of this state until the fictitious business name statement" has been filed.

The trial court explained, "Defendants do not argue that a fictitious business name statement [was filed] or otherwise respond to [Villareal's] argument, essentially conceding to its merits. . . . Especially considering Defendants' failure to respond, the Court finds that [Villareal] establishes that Defendants were transacting business under a fictitious business name that was different than 'LAD-T, LLC' or 'Lithia Motors, Inc.' and therefore were, pursuant to . . . sections 17900 et seq., required to file a fictitious business name statement in order to maintain an action upon any contract made in the fictitious name such as the Arbitration Agreement. . . . The Court finds that [Villareal] sufficiently establishes that a fictitious business name statement was never filed and therefore Defendants cannot maintain the instant proceeding to compel arbitration, which is in essence a suit in equity to compel specific performance of a contract."

Defendants timely appealed.

D.    *Subsequent Fictitious Business Name Registration*

On June 27, 2022, while this appeal was pending and after Villareal filed his respondent's brief, defendants filed a motion requesting we take judicial notice that on May 17, 2022, LAD-T filed with the Registrar-Recorder a fictitious business name statement registering the names "DT Los Angeles Toyota" and "Toyota Downtown LA." We grant the motion and take judicial notice of the file-stamped May 17, 2022 fictitious business name registration attached to defendants' request. (Evid. Code, § 452,

8

subd. (c) [judicial notice may be taken of "[o]fficial acts of the legislative, executive, and judicial departments of the United States and of any state of the United States"]; see *San Francisco CDC LLC v. Webcor Construction L.P.* (2021) 62 Cal.App.5th 266, 281, fn. 5 [judicial notice of existence and facial contents of recorded notice of completion of project was proper where authenticity not challenged].)[3]

---

[3] We also grant defendants' January 13, 2022 motion requesting we take judicial notice of a fictitious business name statement filed by LAD-T on June 22, 2017 for "Toyota of Downtown LA." Villareal also filed a motion for judicial notice asking us to take judicial notice of the following: (a) a printout of the results of a search conducted on March 30, 2022 on the Registrar-Recorder's website for searching fictitious business names showing no results for the fictitious business name "dtla auto group"; (b) the results of a March 29, 2022 Internet search for "Toyota of Downtown LA" offered as evidence Shammas Group operated under the name "Toyota of Downtown LA" prior to June 2017; (c) the results of a March 29, 2022 opengovus.com business search offered as evidence LAD-T in August 2017 filed a business tax registration certificate with the City of Los Angeles identifying Toyota of Downtown LA as its dba; and (d) a copy of an August 15, 2019 article from bloomberglaw.com titled "Insight: Forced Arbitration is Bad News for Employees, California Stats Show." We deny Villareal's motion because exhibits (a) and (d) are not relevant to this appeal (Cal. Rules of Court, rule 8.252(a)(2)(A)), and Villareal has not shown exhibits (b), (c), and (d) are matters subject to judicial notice under Evidence Code sections 451, 452, or 453 (Cal. Rules of Court, rule 8.252(a)(2)(C)).

9

## DISCUSSION

A. *Arbitration Agreements and Standard of Review*

California law strongly favors arbitration "'"as a speedy and relatively inexpensive means of dispute resolution."'" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*); accord, *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1051 ["Any doubts concerning the scope of arbitrable issues will be resolved in favor of arbitration."]; *Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651, 658.) To further this purpose, there is a presumption in favor of arbitrability. (*OTO*, at p. 125; *Ramos*, at p. 1051.) However, notwithstanding the policy favoring arbitration, because arbitration is a matter of consent, "'"a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."'" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); accord, *Khalatian*, at p. 659.)

"An agreement to submit disputes to arbitration 'is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.'" (*OTO, supra*, 8 Cal.5th at p. 125; accord, *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 964; *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1079 ["[U]nder section 2 of the FAA, a state court may refuse to enforce an arbitration agreement based on 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'"].)[4] "Because the existence of the [arbitration] agreement is a statutory prerequisite to granting the petition, the petitioner

_____

[4] The agreement provides and the trial court found the FAA governs the agreement. Villareal on appeal does not dispute the applicability of the FAA.

10

bears the burden of proving its existence by a preponderance of the evidence.  If the party opposing the petition raises a defense to enforcement . . . that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense." (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413; accord, *Pinnacle, supra*, 55 Cal.4th at p. 236.)

We review an order denying a motion to compel arbitration based on findings of fact for substantial evidence.  (*Lopez v. Bartlett Care Center, LLC* (2019) 39 Cal.App.5th 311, 317; *Nieto v. Fresno Beverage Co., Inc.* (2019) 33 Cal.App.5th 274, 279.)  Where the facts are undisputed, we review the denial of a motion to compel arbitration de novo.  (*OTO, supra*, 8 Cal.5th at p. 126; *Pinnacle, supra*, 55 Cal.4th at p. 236.)  Likewise, we independently review the order if the trial court's denial rests solely on a question of law.  (*Lopez*, at p. 317; *Nieto*, at p. 279.)

B.     *Fictitious Business Name Registration Requirement*

Section 17910 provides in relevant part, "Every person who regularly transacts business in this state for profit under a fictitious business name[5] shall . . . [¶]  (a) File a fictitious business name statement in accordance with this chapter not later than 40 days from the time the registrant commences to transact such business."  Section 17918 provides further that

---

[5]     A fictitious business name is defined for limited liability companies as "any name other than the name stated in [the company's] articles of organization and in the case of a foreign limited liability company . . . any name other than the name of the limited liability company as on file with the California Secretary of State . . . ."  (§ 17900, subd. (b)(5).)

where a party transacts business under a fictitious business name, the party may not "maintain any action upon or on account of any contract made, or transaction had, in the fictitious business name in any court of this state until the fictitious business name statement has been executed, filed, and published as required by this chapter."  "The object of section 17918 is simply to ensure that those who do business with persons operating under a fictitious name will know the true identities of "'the individuals with whom they are dealing or to whom they are giving credit or becoming bound.'""  (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 1001, fn. 8 (*Hydrotech*).)

"Failure to comply with the fictitious-name statutes does not make the parties' promises, agreements, and transactions invalid *as such*.  Noncompliance merely prevents a fictitiously named business from *enforcing* obligations owed to it *until* it places on record its true nature and ownership."  (*Hydrotech, supra*, 52 Cal.3d at p. 1001, fn. 8; accord, *Templeton Action Committee v. County of San Luis Obispo* (2014) 228 Cal.App.4th 427, 432 ["sole penalty" for failure to register a fictitious business name is "a bar from maintaining an action on contracts made in the fictitious business name until the statement is filed"]; see *Hand Rehabilitation Center v. Workers' Comp. Appeals Bd.* (1995) 34 Cal.App.4th 1204, 1214 ["failure to file a fictitious business name statement was a mere technical defect which should not deprive [business] of an otherwise valid claim"].)

Although the requirement for a fictitious business statement ordinarily applies to bar a plaintiff from maintaining an action on a contract in the name of a fictitious business, the requirement similarly applies to motions to compel arbitration because "[a] proceeding to compel arbitration is in essence a suit

12

in equity to compel specific performance of a contract." (*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 479; accord, *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 29; *Nelson v. Dual Diagnosis Treatment Center, Inc.* (2022) 77 Cal.App.5th 643, 653.) The fact a motion to compel arbitration is brought by the defendant to an action does not change this result. (See *Hixson v. Boren* (1956) 144 Cal.App.2d 547, 554 [requirement for filing fictitious business name statement applies to filing of cross-complaint].)

Noncompliance with the filing requirement "is a mere matter of abatement pending the trial, which has the result of suspending the trial until the statute is complied with. It is not jurisdictional." (*Kadota Fig Assn. v. Case-Swayne Co.* (1946) 73 Cal.App.2d 796, 804 [trial court erred in dismissing contract action filed by grower's cooperative that failed to register fictitious business name in violation of predecessor statute to section 17918]; see *Tyrone v. Kelley* (1973) 9 Cal.3d 1, 14 ["'Where the plea in abatement on the basis of the fictitious name statute is properly raised prior to trial, the plaintiff may thereafter comply with the statute and then proceed with his action."].)

Where a trial court has dismissed an action based on a business's noncompliance with the fictitious business name registration requirement, the business is not precluded by the doctrine of claim preclusion from bringing a second action (subject to the applicable statute of limitations) after compliance with the registration statute. (See *Folden v. Lobrovich* (1957) 153 Cal.App.2d 32, 34 [where trial court entered a judgment against the plaintiff business operating under an unregistered business name after it failed in its attempt to cure the defect before trial, the court erred in later dismissing the business's

13

subsequent complaint on the basis of claim preclusion]; but see *Hand Rehabilitation Center v. Workers' Comp. Appeals Bd., supra*, 34 Cal.App.4th at pp. 1214-1215 [affirming administrative board's decision to dismiss unregistered business's medical lien claim because the board properly granted the business 45 days to file a registration statement yet the business "made no attempt to do so"].)

C.      *The Filing of a Fictitious Business Statement for DT Los Angeles Toyota Does Not Moot the Appeal*

In their reply brief, defendants contend LAD-T's recent filing of a fictitious business name statement for DT Los Angeles Toyota "resolves any grounds for abatement of [defendants'] petition to compel arbitration under . . . section 17918," rendering the trial court's order denying defendants' motion to compel arbitration moot.  (Capitalization omitted.)  Defendants request we reverse the order on this basis.  In his supplemental briefing, Villareal contends we should instead dismiss the appeal as moot and defendants are barred from filing a second motion to compel arbitration by their lack of diligence in registering the name DT Los Angeles Toyota.[6]  The appeal is not moot.

---

[6]      On July 12, 2022 Villareal filed a motion to strike defendants' reply brief, arguing we should decline to consider theories advanced for the first time in the brief.  We deny Villareal's motion.  However, on September 14, 2022 we invited the parties to submit supplemental letter briefs addressing whether the appeal is moot, and if so, whether the appeal should be dismissed or the trial court order reversed.  We also asked the parties to address whether, if we dismiss the appeal, there is any bar to defendants filing a second motion to compel

14

"""An appellate court will not review questions which are moot and which are only of academic importance.""" (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1053; accord, *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 ["""[T]he duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."""].) """[W]hen, pending an appeal from the judgment of a lower court, and without any fault of the [opposing party], an event occurs which renders it impossible for this court, if it should decide the case in favor of [defendant], to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal'" as moot." (*People v. DeLeon* (2017) 3 Cal.5th 640, 645; see *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1574 ["If events have made [the requested] relief impracticable, the controversy has become 'overripe' and is therefore moot."].)

Because section 17918's bar to enforcing a contract in the name of an unregistered fictitious business is only a matter of abatement that prevents litigation of the motion until there is compliance with the statute (*Kadota Fig Assn. v. Case-Swayne Co., supra*, 73 Cal.App.2d at p. 804), arguably we need not resolve whether a fictitious business name statement was required for defendants to maintain their motion to compel arbitration

arbitration.  In their supplemental brief defendants argued their appeal is not moot, but we should still reverse the order denying their motion to compel arbitration on the basis of their filing of the fictitious business name statement.

15

because regardless of our holding, defendants can renew their motion in the trial court now that they have cured the deficiency. However, it does not follow that defendants' filing of the fictitious business name statement renders it impossible for us to grant defendants relief if we were to decide the appeal in their favor. (See *People v. DeLeon, supra*, 3 Cal.5th at p. 645.) If we were to reverse the trial court's order on the merits, as defendants request, they would obtain immediate relief (compelling arbitration). But if we dismiss the case as moot, defendants will need to file a second motion to compel arbitration, which Villareal will undoubtedly again oppose, this time based on defendants' delay in curing their lack of a fictitious business name statement. Accordingly, we review the trial court's order on the merits.

D.      *The Trial Court Did Not Err in Denying the Motion To Compel Arbitration*

Defendants assert four grounds for reversing the trial court's order. Defendants first contend they were not required to file a fictitious business name statement for DT Los Angeles Toyota because that name was only an "internal DBA" during the Shammas acquisition, and they did not regularly transact business under that name. However, defendants' witnesses averred that Lithia used the name DT Los Angeles Toyota to determine for which of the eight Shammas dealerships a given worker was employed. And defendants admitted their software used this information to populate the agreements they reached with the employees. This evidence provided substantial evidence to support the trial court's finding that defendants "were transacting business under a fictitious business name that was different than 'LAD-T, LLC' or 'Lithia Motors, Inc.'" (See § 17910

16

[registration requirement applies to "[e]very person who regularly transacts business in this state for profit"].) The relevant fact here is not, as defendants frame it, whether they marketed vehicles to consumers under the name DT Los Angles Toyota, but rather, whether they used the fictitious business name in contracting with their numerous employees. (See *Hydrotech, supra*, 52 Cal.3d at p. 1001, fn. 8 [section 17918 is designed "to ensure that those who do business with persons operating under a fictitious name will know the true identities of "'the individuals with whom they are dealing'""].) Moreover, even accepting that the initial use of the name DT Los Angeles Toyota was for expedience during the Shammas acquisition in the summer of 2017, there is no evidence defendants ever amended the agreements after the acquisition, thereby continuing to do business with their employees in the name of DT Los Angeles Toyota.

Defendants also contend the trial court erred in refusing to enforce the agreement because "minor variations in the employer's name do not invalidate an arbitration agreement." (Capitalization omitted.) This misapprehends the issue: The question is not whether the agreement was unenforceable because the entity lacked contractual capacity—the trial court expressly found the agreement was enforceable. Rather, the issue is whether section 17918 allows a company to deviate from a registered fictitious business name without a new registration. Defendants' reliance on *Noori v. Countrywide Payroll & HR Solutions, Inc.* (2019) 43 Cal.App.5th 957, 964 to support their contention DT Los Angeles Toyota is an acceptable de minimis variation of the registered name Toyota of Downtown LA is misplaced. In *Noori*, the Court of Appeal observed in the context

17

of an employee's claim that his employer violated Labor Code section 226, subdivision (a), by failing to include the legal entity employing him on his wage slips that "minor truncations of an employer's name have been found to comply with the statute." But the *Noori* court went on to hold the employer violated the Labor Code because the acronym on the wage slips, CSSG, corresponded to an unregistered out-of-state business entity called Country Wide Staffing Solutions Group, whereas the company's registered fictitious business names were Countrywide HR and CWHR.  (*Id.* at pp. 961, 965.)

The federal cases cited by defendants involved only very minor truncations of the legal entity's names.  (See e.g., *Mejia v. Farmland Mutual Insurance* Company (E.D. Cal., June 26, 2018, No. 217CV00570TLNKJN) 2018 U.S. Dist. Lexis 106856, at *15, *16 [reference to Farmland Mutual Insurance Co. instead of registered name Farmland Mutual Insurance Company did not violate Labor Code section 226, subdivision (a)]; see *Elliot v. Spherion Pacific Work, LLC* (C.D. Cal. 2008) 572 F.Supp.2d 1169, 1179-1180 [reference to Spherion Pacific Work, LLC, instead of Spherion Pacific Workforce, LLC, did not violate Labor Code section 226, subdivision (a)]; cf. *Clarke v. First Transit, Inc.* (C.D. Cal. Aug. 11, 2010, No. CV 07-6476 GAF) 2010 U.S. Dist. LEXIS 147118, at *10 [jury could find use of the name "First Transit" with the company logo instead of "First Transit Transportation, LLC," violated the Labor Code].)[7]

---

[7]     The only case defendants cite that involved the assertion of section 17918 as a defense to a motion to compel arbitration does not assist them.  In *Taylor v. Eclipse Senior Living* (S.D. Cal., Mar. 15, 2021, No. 20-CV-0190-LAB-WVG) 2021 U.S. Dist. Lexis

18

DT Los Angeles Toyota is not a minor abbreviation or truncation of the registered fictitious business name Toyota of Downtown LA. The name inverts where "Toyota" appears, while using the abbreviation "DT Los Angeles" to refer to "Downtown LA" as used in the registered name. Although defendants argue there were no other Toyota vehicle dealerships in downtown Los Angeles, they do not present evidence there were no Toyota dealerships elsewhere in "LA," which could refer to an area larger than the City of Los Angeles (i.e., Los Angeles County). Further, LAD-T's registration of Toyota of Downtown LA did not ensure that Villareal, who was doing business with DT Los Angeles Toyota, knew "the true identities of '"the individuals with whom [he was] dealing."'" (*Hydrotech, supra*, 52 Cal.3d at p. 1001, fn. 8.) The trial court therefore did not err in rejecting the argument the name DT Los Angeles Toyota was a de minimis variation of the registered fictitious business name.

Defendants further contend Villareal waived any defense to performance of the agreement based on section 17918 because he failed to raise the lack of registration "at the earliest opportunity." (See *Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1604 ["[A] plea in abatement such as lack of capacity to sue 'must be raised by defendant at the earliest

48193, the federal district court denied without prejudice a motion to compel arbitration filed by Eclipse Senior Living because it sought to enforce an arbitration agreement made in the name of Elmcroft Senior Living without filing a fictitious business name statement for Elmcroft Senior Living. (*Id*. at *4 ["Crediting . . . Eclipse's representation that it signed the agreements, but under the Elmcroft name that it operates under, leads only to the conclusion that Eclipse can't enforce the arbitration agreement, albeit temporarily."].)

19

opportunity or it is waived. . . . The proper time to raise a plea in abatement is in the original answer or by demurrer at the time of the answer."].) This contention fares no better. Villareal properly asserted section 17900 et seq. at the first opportunity to do so—in his opposition to the motion to compel arbitration. Defendants' waiver argument is premised on the notion that Villareal was required to respond to their "petition" to compel arbitration within 10 days after it was served pursuant to Code of Civil Procedure sections 1290 and 1290.6. However, those provisions relate to petitions that commence a proceeding, whereas defendant's motion to compel arbitration in the existing FEHA action was, as noted, effectively a motion and not a petition. Additionally, both parties treated the petition as a motion, filing their respective opposition and reply briefs in advance of the May 2021 hearing date as prescribed for motions under Code of Civil Procedure section 1005.[8]

Finally, defendants contend the FAA preempts section 17918 to the extent the section limits the enforcement of arbitration agreements. It does not. Under the FAA, an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) As the

---

[8] Defendants' argument they were prejudiced because they did not have time to execute, file, and publish a fictitious business name statement before the hearing on the motion to compel arbitration is not persuasive given that they failed to seek a continuance of the hearing. Nor did they make any effort to register the name (by filing a one-page statement) until more than a year later, during the pendency of this appeal.

California Supreme Court explained in *McGill v. Citibank, N.A., supra*, 2 Cal.5th at page 962, the savings clause in section 2 "'indicates' that Congress's 'purpose' in enacting the FAA 'was to make arbitration agreements as enforceable as other contracts, *but not more so.*'" (Quoting *Prima Paint v. Flood & Conklin* (1967) 388 U.S. 395, 404, fn. 12; accord, *Patterson v. Superior Court* (2021) 70 Cal.App.5th 473, 491; see *Ting v. AT&T* (9th Cir. 2003) 319 F.3d 1126, 1148 ["[A]s long as state law defenses concerning the validity, revocability, and enforceability of contracts are *generally applie*d to all contracts, and not limited to arbitration clauses, federal courts may enforce them under the FAA."].) Section 17918 does not substantively limit a company's capacity to enter a binding agreement; it merely abates the company's ability to enforce the agreement until it complies with the fictitious business name registration requirement. (*Hydrotech, supra*, 52 Cal.3d at p. 1001, fn. 8.) And section 17918 applies to all actions on a contract, not just arbitration agreements. (See *Mitchell v. American Fair Credit Assn.* (2002) 99 Cal.App.4th 1345, 1357 [FAA did not preempt state law signature requirement as applied to arbitration agreement because it is a "neutral state law contract formation requirement"].)

E.     *We Vacate the Order Denying the Motion To Compel Arbitration To Afford Villareal an Opportunity To Assert a Waiver Defense*

Now that we have concluded the trial court did not err in denying defendants' motion to compel arbitration, we must address the appropriate disposition in light of the unusual facts before us. Because defendants have (belatedly) filed their

21

fictitious business name statement, they may maintain their motion to compel arbitration. Therefore, if we affirm the trial court's order, defendants could simply file another motion to compel arbitration. But this would waste judicial resources given that the trial court has already ruled on Villareal's principal defenses, including unconscionability. In addition, if FSG files a second motion to compel arbitration, this would further delay the trial court proceeding (now two years after Villareal filed this action) given the need for the filing, scheduling, and briefing on a new motion. And it would be unfair to Villareal to direct the trial court to grant defendants' motion in light of the late-filed statement because that would deny Villareal an opportunity to raise waiver as a defense in light of defendants' delay in filing the statement.[9]

We agree with Villareal that defendants failed to act diligently in filing their fictitious business name statement. Defendants filed their motion to compel arbitration on October 14, 2020. In his May 18, 2021 opposition, Villareal argued the motion should be denied because of the failure of defendants to file a fictitious business name statement. And in its June 1 order, the trial court denied the motion on this basis. Defendants then filed their notice of appeal on June 18. But it was not until May 17, 2022, after Villareal filed his respondent's

---

[9]     Although the trial court could have suspended a ruling on the motion until defendants filed the statement (avoiding the inefficiency of addressing this issue on appeal), neither party requested suspension of the proceedings or a continuance of the hearing, and the court properly denied the motion based on section 17918.

22

brief, that defendants elected to file the statement with the Registrar-Recorder, and they waited until June 27, 2022 to request we take judicial notice of the filed statement. Defendants provide no explanation for why they would vigorously defend their position that no fictitious business name statement was required, including appealing the trial court's order, then abandon this position at the eleventh hour by filing the very statement that could have enabled the case to proceed to arbitration a year earlier.

Although we are troubled by the dilatory conduct by defendants, the trial court will need to determine in the first instance whether defendants have by their conduct waived their right to arbitration. "A motion to compel arbitration is properly denied when the moving party has waived its right to do so." (*Spracher v. Paul M. Zagaris, Inc.* (2019) 39 Cal.App.5th 1135, 1137; accord, *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 982 ["[Civil Code] [s]ection 1281.2, subdivision (a), provides that a trial court shall refuse to compel arbitration if it determines that '[t]he right to compel arbitration has been waived by the petitioner.'"].) However, "[i]n light of the policy in favor of arbitration, 'waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof.'" (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 375 (*Iskanian*), overruled in part on another ground in *Viking River Cruises, Inc. v. Moriana* (2022) 595 U.S. ___ [142 S.Ct. 1906]; accord, *St. Agnes Medical Center v. Pacificare* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*).) The FAA and California law apply the same standards for determining whether a party has waived the right to seek

arbitration.  (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 444.)

"'California courts have found a waiver of the right to demand arbitration in a variety of contexts, ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration [citations] to instances in which the petitioning party has unreasonably delayed in undertaking the procedure. [Citations.]  The decisions likewise hold that the "bad faith" or "willful misconduct" of a party may constitute a waiver and thus justify a refusal to compel arbitration.'" (*Iskanian, supra*, 59 Cal.4th at pp. 374-375; accord, *Davis v. Blue Cross of Northern California* (1979) 25 Cal.3d 418, 425-426.)

The Supreme Court in *St. Agnes, supra*, 31 Cal.4th at page 1196 held that the following factors are relevant to the waiver inquiry:  "'"(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party."'" (*Accord, Iskanian, supra*, 59 Cal.4th at p. 375.)

We are not in a position to address the *St. Agnes* factors given the lack of briefing on waiver.  (See *Engalla v. Permanente*

24

*Medical Group, Inc., supra*, 15 Cal.4th at p. 982 [plaintiffs'
"waiver claims may have merit, but . . . the question of waiver
must be determined by the trial court on remand"].)  Although
the factors are couched in terms of a typical motion to compel
arbitration filed in the trial court, they apply at this stage as
well.  For example, the trial court will need to consider whether
the """"litigation machinery"""" (here, the appellate process) was
substantially invoked.  (*St. Agnes, supra*, 31 Cal.4th at p. 1196.)
And, among other factors, was Villareal prejudiced by the delay?
(*Id*. at p. 1203 ["In California, whether or not litigation results in
prejudice also is critical in waiver determinations."]; accord,
*Iskanian, supra*, 59 Cal.4th at pp. 376-377.)  Further, the court
may consider whether LAD-T's late change in position was made
in bad faith.  (*Iskanian*, at p. 375; see *Engalla*, at p. 984 [there
was ample evidence insurer's delay in selecting an arbitrator was
unreasonable or taken in bad faith, which could provide sufficient
grounds for trial court to conclude on remand the insurer waived
its right to compel arbitration].)

Accordingly, in the interests of justice we vacate the court's
order denying the motion to compel arbitration and direct the
court to again consider the motion to compel arbitration limited
to the narrow issue of whether defendants have waived their
right to compel arbitration by their delay in filing the fictitious
business name statement.

## DISPOSITION

The order denying defendants' motion to compel arbitration is vacated and the matter remanded for the trial court to address whether defendants have waived their right to compel arbitration.  If the court finds waiver, it should again deny the motion to compel arbitration; if it finds no waiver, it should grant the motion.  Villareal is to recover his costs on appeal.

FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.

26